An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

JOB'S PEAK RANCH COMMUNITY
ASSOCIATION, INC., A NEVADA
CORPORATION,
Appellant,
vs.
DOUGLAS COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF
NEVADA; AND FIVE CREEK, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondents.

No. 55572



FILED

AUG 25 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

*ORDER AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING*

This is an appeal from a district court order remanding a county ordinance back to the Board of Commissioners (BOC) and dismissing all other claims. Ninth Judicial District Court, Douglas County; Michael P. Gibbons, Judge.

In December 1996, respondent Five Creek, LLC, entered into a Public Facilities and Subdivision Improvement Agreement and Development Agreement (the Development Agreement) with respondent Douglas County (the County) that provided for the development of Job's Peak Ranch, a residential subdivision. The Development Agreement initially required Five Creek to finance, install, warranty, and maintain a new water system for Job's Peak and to provide financial security for Five Creek's "performance of the obligations in [the Development] [A]greement." The initial Development Agreement also stated that the

> OWNER or its grantees, shall be entitled to hook-up to the [water] system without cost, for the hook-up or for any costs associated with the

15-25763

expansion or upgrade of the system, but shall be liable for all regular fees for service such as the annual "standby fee" and the meter set fees with each building permit.

Five Creek also filed a Declaration of Covenants, Conditions & Restrictions (CC & Rs) for the Job's Peak Ranch Community Association (the Association). The CC & Rs permitted Five Creek to appoint and remove members of the homeowners' association board at its discretion until one of the following occurred: (1) 60 days after Five Creek had conveyed 75 percent of the units, (2) 5 years after Five Creek stopped selling units, (3) 5 years after Five Creek last subjected new property to the CC & Rs, or (4) 10 years after the CC & Rs were recorded. Five Creek controlled the homeowners' association during most of the Job's Peak development.

Despite numerous problems with the water quality, the County, through the BOC, approved an Agreement for Water System Dedication (the Dedication Agreement), which transferred control and operation of the Job's Peak Ranch water system from Five Creek to the County in December 2005. The County acknowledged that it "had a chance to inspect, test and evaluate the system over the past 24 months, and . . . accept[ed] the [water] system as-is" with certain delineated exceptions.

Then, in February 2006, the County approved the Fourth Amendment to the Development Agreement and adopted the amendment by Ordinance 2006-1162. The Fourth Amendment to the Development Agreement removed the language entitling the homeowners to access the water system without hook-up, expansion, or upgrade costs. The Fourth Amendment also added a section permitting the "prospective collection of connection fees" for future homeowners.

Pursuant to the CC & Rs adopted by Five Creek, Five Creek's control period of the homeowners' association ended in May or June 2006, and the Job's Peak residents gained control of the homeowners' association in July 2006. In September 2009, the County adopted Resolution 2009R-063 to alter the water rates and institute connection fees for Job's Peak homeowners. Resolution 2009R-063 raised water rates for all homeowners in Job's Peak and added connection fees for properties whose interests had not vested. The Association responded by filing an Application for Writs of Mandamus and Prohibition or, in the Alternative, Complaint for Declaratory Relief, Injunction, Damages, and Indemnity against Five Creek and the County in October 2009.[1] The Association challenged the adoption of the Fourth Amendment, the Dedication Agreement, and Resolution 2009R-063 through its contract and declaratory relief claims. Alternatively, if those challenges were unsuccessful, it also sought to enforce the Fourth Amendment against the County. The Association also raised claims for negligence, breach of fiduciary duty, accounting, intentional and negligent misrepresentation, and indemnity.

The County and Five Creek both filed motions to dismiss the Association's complaint. In February 2010, the district court entered an order remanding Resolution 2009R-063 back to the County because notice of the resolution was insufficient, and dismissed all of the Association's other claims because they were time barred or because the Association

---

[1]This court previously denied a writ petition filed by the Association approximately 20 days after filing this appeal and which raised virtually the same issues. *See Job's Peak Ranch Cmty. Ass'n, Inc. v. Douglas Cnty.*, Docket No. 55694 (Order Denying Petition for Writ of Mandamus or Prohibition, April 9, 2010).

lacked standing. This appeal followed. For the reasons set forth below, we affirm in part and reverse in the part the district court's order.[2]

*Standard of review*

Initially, we note that the district analyzed the County's and Five Creek's motions to dismiss under the incorrect standard of review, articulating the standard for a petition for judicial review rather than a motion to dismiss pursuant to NRCP 12(b)(5). Nevertheless, we have consistently held that

> [i]n considering an appeal from an order granting a motion to dismiss for failure to state a claim, this court applies a rigorous, de novo standard of review. In our review, we accept the plaintiff[']s factual allegations as true and then determine whether these allegations are legally sufficient to satisfy the elements of the claim asserted.

*Pack v. LaTourette*, 128 Nev., Adv. Op. 25, 277 P.3d 1246, 1248 (2012) (internal citation omitted).

---

[2]On appeal, neither the County nor Five Creek challenge the district court's order setting aside Resolution 2009R-063 and remanding it back to the County for insufficient notice. To be sure, Five Creek's answering brief merely joins in the County's answering brief; any reference to the County's arguments encompasses those presumably being made by Five Creek as well.

In addition, the parties do not challenge the district court's ruling on the Association's second claim for relief: a writ of mandamus prohibiting the County from enforcing the water rates. The parties also do not challenge the district court's order finding that the Association has representational standing for its units' owners under NRS 116.3102(1)(d). Therefore, we do not discuss these issues further in this order. *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 127 Nev., Adv. Op. 47, 256 P.3d 958, 961 n.2 (2011) ("Because [the appellant] failed to provide any argument or citation to authority on the issues . . . , we will not address these issues.").

*The district court correctly analyzed whether the Association timely filed to set aside Resolution 2009R-063*

The district court analyzed several statutes in determining whether the Association had timely challenged Resolution 2009R-063, including portions of NRS Chapters 244, 271, 278, and 318. After conducting its analysis, the district court correctly concluded that the more specific statute controls and applied NRS Chapter 318, which pertains to rate schedules for services provided by a county-operated water system. Under NRS 318.199(6), a party wishing to challenge a resolution adopted by a county board has 30 days from the resolution's effective date to commence an action to set aside the resolution. And in this instance, the County adopted Resolution 2009R-063 on September 3, 2009, to alter the water rates and institute connection fees for Job's Peak homeowners, and the resolution became effective on October 1, 2009. The Association filed its complaint on October 5, 2009, well within the 30-day period to challenge a change in water rates. *See* NRS 318.199(6). Accordingly, we agree with the district court that the Association's challenge to the resolution establishing the new water rates was timely.

*The district court incorrectly dismissed the Association's remaining claims as untimely under NRS 278.0235 and NRS 11.190*

*NRS 278.0235*

The district court broadly concluded that the Association's challenges to the County's adoptions of the Development Agreement, its amendments, and the Dedication Agreement were untimely under NRS 278.0235, without considering the impact of NRS 278.0205(1).[3] Under

---

[3]The Legislature amended certain subsections in NRS 278.0205 and 278.0235 during the 2015 legislative session. S.B. 66, 78th Leg. (Nev. *continued on next page...*

NRS 278.0205(1), "[t]he agreement for development of land may be amended or cancelled, in whole or in part, by *mutual consent of the parties to the agreement or their successors in interest . . . .*" (Emphasis added.) The term successor in interest is not defined in the statute or in the Development Agreement. We have previously held that a successor in interest is "one who has acquired legal title by deed from a vendor." *Title Ins. & Trust Co. v. Chicago Title Ins. Co.*, 97 Nev. 523, 526, 634 P.2d 1216, 1218 (1981); *see also Black's Law Dictionary* 1431 (6th ed. 1990) (defining "[s]uccessor in interest" as "[o]ne who follows another in ownership or control of property").

According to the terms of the Development Agreement, the "agreement may be amended by the parties by an agreement in writing executed by OWNER and adopted by the COUNTY as an ordinance in compliance with Nevada Revised Statutes." The Development Agreement defines "OWNER" as Five Creek and "all its officers and agents and other persons or entities or association [including successors in interest] which hold any legal or equitable interest in the real property."

Under the Development Agreement, Job's Peak Ranch homeowners who purchased property from Five Creek are successors in interest. NRS 278.0205(1) expressly requires the consent of Five Creek's successors in interest for any amendments to land development agreements. It is unclear from the record whether the homeowners purchased lots from Five Creek prior to the adoption of the Dedication

---

*...continued*

2015). Any discussion in this order related to these statutes refers to the statutes in effect at the time of the cause of action.

Agreement and/or the Fourth Amendment.[4] And nothing in the record demonstrates that the County provided any evidence that it obtained the consent of any homeowners who had purchased property and had vested rights, but had not given consent, prior to amending the Development Agreement, thus, violating NRS 278.0205(1). Without consent, the Dedication Agreement and the Fourth Amendment would be invalid as to those homeowners. Because a material issue of fact remains undetermined, we remand this matter to the district court for further exploration of this issue.

Moreover, pursuant to NRS 278.0235, any action seeking judicial review of a governing body's decision regarding a land development issue "authorized by NRS 278.010 to 278.630, inclusive," must be brought within 25 days after notice of the final decision has been filed with the clerk of the governing body. Accordingly, without the "mutual consent" required by NRS 278.0205(1), NRS 278.0235's 25-day limitations period for judicial review would not apply because any governmental action on the Dedication Agreement and the Fourth Amendment would be invalid and not "authorized by NRS 278.010 to NRS 278.630," as it relates to those non-consenting homeowners with vested rights in the Development Agreement.

*NRS 11.190*

The district court also dismissed the Association's negligence, misrepresentation, fraud, breach of fiduciary duty, accounting, and indemnity claims, stating that they were barred by NRS 11.190's statutes

---

[4]The Association purports to represent approximately 55 Job's Peak Ranch lot owners; however, it fails to clarify when each of those individuals became lot owners.

of limitations. While we agree with the district court's dismissal of the Association's claims for breach of fiduciary duty and misrepresentation, we disagree that the Association's remaining claims were statutorily barred.

"In determining whether a statute of limitations has run against an action, the time must be computed from the day the cause of action accrued. A cause of action 'accrues' when a suit may be maintained thereon." *Clark v. Robison*, 113 Nev. 949, 951, 944 P.2d 788, 789 (1997) (internal citation omitted). If the facts giving rise to the cause of action are matters of public record then "[t]he public record gave notice sufficient to start the statute of limitations running." *Cumming v. San Bernardino Redev. Agency*, 125 Cal. Rptr. 2d 42, 46 (Ct. App. 2002); *see also Allen v. Webb*, 87 Nev. 261, 272, 485 P.2d 677, 684 (1971) (Gunderson, J., concurring) (concluding that, where a written document regarding real property was not properly recorded, there was not proper notice of the conveyance of that property so as to trigger the statute of limitations period on a quiet title action).

The following dates are pertinent to this discussion: the Dedication Agreement was recorded on December 20, 2005; the County published notice of its intentions regarding the Fourth Amendment on January 11, 2006, and recorded the amendment on March 3, 2006; and Five Creek's control of the Association ended on July 22, 2006, when the homeowners elected a new board for the Association. The Association filed its claims on October 5, 2009. Based on these dates, we determine that the Association's causes of action accrued on the following dates: (1) the claims against the County and Five Creek for declaratory relief and specific performance accrued on December 20, 2005, when the County

accepted the water system under the Dedication Agreement; (2) the claim against the County for breach of contract accrued on March 3, 2006, when the County recorded the Fourth Amendment; (3) the claims against the County for negligence in accepting the Dedication Agreement accrued on December 20, 2005, when the agreement was recorded; (4) the claim against Five Creek for breach of fiduciary duty while in control of the Association accrued at the latest on July 22, 2006; (5) the claim against Five Creek and the County for accounting while Five Creek was in control of the Association accrued upon adoption of Resolution No. 2009R-063 in September 2009, when the Association would become aware that possibly not all funds "were expended for the benefit" of the water system; (6) the claims against the County and Five Creek for intentional and negligent misrepresentation accrued on March 3, 2006, when the Fourth Amendment was recorded and dispelled any reasonable belief that the homeowners' water rates would not be increased; and (7) the claim against the County and Five Creek for either "express or implied duty to indemnify" homeowners would accrue when the Fourth Amendment was recorded on March 3, 2006.

Pursuant to NRS 11.190, the Association's claims have the following periods of limitation: (1) claims for declaratory relief and specific performance based on breach of a written contract expire after six years, NRS 11.190(1)(b); (2) similarly, claims for breach of contract expire after six years, NRS 11.190(1)(b); (3) claims for negligence based on breach of a written contract expire after six years, NRS 11.190(1)(b); (4) claims for breach of fiduciary duty expire after three years, NRS 11.190(3)(d); (5) claims for accounting based on an underlying breach of contract claim expire after six years, NRS 11.190(1)(b); (6) claims for misrepresentation

SUPREME COURT
OF
NEVAOA

(O) 1947A

or fraud expire after three years, NRS 11.190(3)(d); and (7) equitable claims for express indemnity expire after six years, NRS 11.190(1)(b), and claims for implied indemnity expire after four years, NRS 11.190(2)(c). Thus, we conclude that the district court correctly concluded that the Association's claims for breach of fiduciary duty and misrepresentation, filed on October 5, 2009, were barred by the three-year statute of limitations for those causes of action, which expired on July 22, 2009, and March 3, 2009, respectively. The district court erroneously concluded, however, that the Association's remaining claims were statutorily barred, as they were subject to four and six year limitations periods that had not yet expired at the time the Association filed its claims.[5]

For the reasons set forth above, we ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMANDED to the district court for further proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.        _____, J.
Cherry                              Pickering

cc:    Ninth Judicial District Court, Department 2

_____

[5]The Association also argues that the district court erred in dismissing its claims to enforce the Development Agreement and its amendments because it was a third-party beneficiary to the agreements. Because we agree with the district court's finding that the Association has representational standing under then-existing NRS 116.3102(1)(d), we determine that this argument is moot.

James Georgeson, Settlement Judge
Kelly R. Chase
Thorndal Armstrong Delk Balkenbush & Eisinger/Reno
Douglas County District Attorney/Minden
Minden Lawyers, LLC
Douglas County Clerk